IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BONNIE SHINN,                        )
                                     )
              Plaintiff,             )
                                     )
vs.                                  )        Case No. 08-cv-0632-MJR-PMF
                                     )
AFTON CHEMICAL CORP.,                )
                                     )
              Defendant.             )

<u>MEMORANDUM AND ORDER</u>

Reagan, District Judge:

        A.     <u>Introduction and Procedural Background</u>

Afton Chemical Corporation owns and operates a chemical plant in Sauget, Illinois, within this Judicial District. Bonnie Shinn worked at the plant – first as a chemical operator and later as a production supervisor – from September 6, 1994 to September 8, 2006. On September 9, 2008, Shinn filed suit in this Court, alleging that Afton's termination of her employment violated the Family Medical Leave Act, 29 U.S.C. 2601, et seq., and constituted intentional infliction of emotional distress.

The case is set for final pretrial conference October 23, 2009 and bench trial November 9, 2009 (see Docs. 6 and 19). A settlement conference has not been held; it was waived by the parties (see Doc. 17). The case comes now before the undersigned District Judge on the parties' fully-briefed cross-motions for summary judgment. Analysis begins with the standard governing

such motions.

     B.   <u>Applicable Legal Standards</u>

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. ***Durable Mfg. Co. v. U.S. Department of Labor***, — F.3d —, 2009 WL 2501770 (7th Cir. Aug. 18, 2009), *citing* FED. R. CIV. P. 56(c). *Accord Levy v. Minnesota Life Ins. Co.*, 517 F.3d 519 (7th Cir. 2008)*;* *Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In ruling on a summary judgment motion, this Court must view in the light most favorable to the nonmovant the evidence plus all inferences reasonably drawn from the evidence. ***TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.***, 491 F.3d 625, 630 (7th Cir. 2007); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).

When cross-motions for summary judgment are filed, "we look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Diaz v. Prudential Ins. Co. of America*, 499 F.3d 640, 643 (7th Cir. 2007), *quoting Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

As the United States Court of Appeals for the Seventh Circuit stated six weeks ago, on cross-motions for summary judgment, the Court must

construe "the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." **Durable, 2009 WL 2501770 at \*2, citing Rickher v. Home Depot., Inc., 535 F.3d 661, 664 (7th Cir. 2008). Accord Jefferson v. United States, 546 F.3d 477, 480 (7th Cir. 2008); Samuelson v. LaPorte Community School Corp., 526 F.3d 1046, 1051 (7th Cir. 2008); Aux-Sable Liquid Products v. Murphy, 526 F.3d 1028, 1032 (7th Cir. 2008).**

The nonmovant cannot defeat the opponent's summary judgment motion by resting on the pleadings. Rather, the non-movant (i.e., the party opposing the adverse litigant's motion) must provide evidence on which the jury or court could find in her favor. **See Maclin v. SBC Ameritech, 520 F.3d 781, 786 (7th Cir. 2008).**

C.    Analysis

Count I alleges that Afton violated the FMLA by terminating Shinn's employment in retaliation for her exercise of FMLA rights, i.e., taking leave to care for her husband, Kenneth, who was suffering from Hodgkin's lymphoma and required stem cell transplant operations.[1]

---

[1]    The complaint alleges Shinn notified her employer of the need to take leave to care for her husband in May 2004, in June 2004 and in November 2005. The complaint also alleges that in May 2006, Shinn sustained a knee injury which required her to obtain medical treatment and surgery followed by ten weeks of recovery. Shinn was suspended in August 2006 and discharged on September 8, 2006 (Complaint, Doc. 2, p. 3).

Count II alleges that Afton interfered with Shinn's substantive FMLA rights, burdening her exercise of statutory rights "by holding [her] accountable and ascribing discipline to her for work not completed while on FMLA leave" (Doc. 2, p. 6).   Count III alleges intentional infliction of emotional distress under Illinois law.

■■■   OVERVIEW OF FMLA

The FMLA was enacted to protect the stability and economic security of families and to promote the national interest in preserving family integrity, while accommodating the legitimate interests of employers. **29 U.S.C. 2601(b)**.   The Act entitles an eligible employee to 12 weeks of unpaid leave per year for certain life events, such as the birth or adoption of a child, a "serious health condition" that renders the employee unable to perform her job, or the care of a spouse or parent with a serious health condition. **29 U.S.C. 2601(b)(2)**; ***Ryl-Kuchar v. Care Centers, Inc.*, 565 F.3d 1027, 1030 (7th Cir. 2009)**; ***Pirant v. U.S. Postal Service*, 542 F.3d 202, 206 (7th Cir. 2008)**.

The Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." ***Kaufmann v. Federal Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)**, ***quoting* 29 U.S.C. 2615(a)(1)**.   These rights include an employee's right to reinstatement upon return from leave (i.e., the right to return to the same position and benefits the employee held before taking leave).  ***Kaufmann*, 426**

Page 4 of  21

**F.3d at 884**; *Simpson v. Office of Chief Judge of Circuit Court of Will County*, **559 F.3d 706, 712 (7ᵗʰ Cir. 2009)**, *citing* **29 U.S.C. 2615(a)(1)**.

"Employers must not interfere with an employee's attempt to exercise any of her FMLA rights," and firing an employee "to prevent her from exercising her right to return to her prior position" can constitute interference with the employee's FMLA rights.  *Simpson*, **559 F.3d at 712.**[2]

In addition to these *substantive* provisions, the FMLA declares it unlawful for an employer to discharge or discriminate against an individual for opposing practices "made unlawful by this subchapter," **29 U.S.C. 2615(a)(2),** or to discharge or discriminate against an employee for taking part in proceedings or inquiries under the FMLA, **29 U.S.C. 2615(b)**.  The Seventh Circuit has construed these provisions as creating a cause of action for *retaliation*.  *Kaufmann*, **426 F.3d at 884,** *citing Buie v. Quad/Graphics, Inc.*, **366 F.3d 496, 503 (7ᵗʰ Cir. 2004), and** *King v. Preferred Tech. Group*, **166 F.3d 887, 891 (7ᵗʰ Cir. 1999).**

Cases distinguish these two categories of FMLA claims – those

---

[2]   An employee's right to reinstatement is not absolute.  Indeed, an employer can refuse to restore an employee to her former position, if restoration would confer a right or benefit the employee would not have been entitled to if she had never left the workplace.  *Simpson*, **559 F.3d at 712,** *citing Kohls v. Beverly Enters. Wis., Inc.*, **259 F.3d 799, 805  (7ᵗʰ Cir. 2001), and 29 U.S.C. 2614(a)(3)(B).** *See also Lewis v. School District #70,* **523 F.3d 730, 741 (7ᵗʰ Cir. 2008);** *Harrell v. U.S. Postal Serv.*, **445 F.3d 913, 919 (7ᵗʰ Cir.),** *cert. denied*, **549 U.S. 1095 (2006)**.

based on "interference" with substantive FMLA rights vs. those alleging retaliation based on the exercise of FMLA rights.  A wrongful termination lawsuit could be based on either a <u>retaliation</u> theory or on an <u>interference</u> theory.   The difference is "the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee … entitlements under the Act." **Kaufmann, 426 F.3d at 884.**

Shinn casts her complaint as containing two FMLA claims – a <u>retaliation</u> claim (Count I) and an <u>interference</u> claim (Count II).[3]  Both parties maintain that no genuine issues of material fact exist as to either of these claims.  Each party maintains that it/she is entitled to judgment as a matter of law on these claims.  We examine the FMLA retaliation claim first, starting with Defendant Afton's motion for summary judgment.

■■■   FMLA RETALIATION CLAIM

As in actions under other employment discrimination statutes, an FMLA plaintiff may proceed via the direct or indirect method of proof. **Daugherty, 2009 WL 2477640, *3.   Accord Smith v. Hope School, 560 F.3d 694, 702 (7th Cir. 2009).**

---

[3]   Defendant addresses the claims as characterized by Plaintiff (i.e., Count I = FMLA retaliation claim) but suggests that the retaliation allegations more properly are treated as an FMLA interference claim (Doc. 24, p. 4).

Under the direct method of proving FMLA retaliation, the employee must present evidence of statutorily protected activity, a materially adverse action taken by the employer, and a causal link between the two.  *Id.*  An employee prevails under the direct method by showing an admission of discrimination or by constructing "a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker."  ***Id.***, **quoting *Ridings v. Riverside Med. Ctr.***, **537 F.3d 755, 771 (7th Cir. 2008), and *Phelan v. Cook County***, **463 F.3d 773, 779 (7th Cir. 2006).** [4]

Under the indirect method of proving FMLA retaliation, a plaintiff averts summary judgment by establishing that after taking FMLA leave, she was treated "less favorably than similarly situated employees who did not take FMLA leave, even though she was performing her job in a satisfactory manner."  ***Lewis***, **523 F.3d at 741, *citing Burnett v. LFW, Inc.***, **472 F.3d 471, 481-82 (7th Cir. 2006).**

---

[4]     In ***Lewis v. School District #70,*** **523 F.3d 730, 741 (7th Cir. 2008),** the Court clarified that a plaintiff using the direct method on an FMLA retaliation claim survives summary judgment if she creates "a triable issue of whether the adverse employment action of which she complains had a discriminatory motivation."  She need not show that retaliation was the *only* reason for her termination; she need only demonstrate that her protected conduct was a substantial or motivating factor in the employer's decision.  ***Id.* at 741-42, *citing Culver v. Gorman & Co.***, **416 F.3d 540, 545 (7th Cir. 2005).**

Shinn has produced (and the record before the Court contains) no evidence of discriminatory animus or retaliatory motive on the part of Afton. She presents neither admissions by Afton nor the requisite mosaic of circumstantial evidence allowing an inference of intentional retaliation by Afton. *See Cole v. Illinois*, 562 F.3d 812, 815 (7th Cir. 2009). Accordingly, the Court assesses her claims under the indirect method.[5]

Six months ago, the Seventh Circuit scrutinized an employee's FMLA retaliation claim in *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 634-35 (7th Cir. 2009), a case instructive for the matter at bar.

> Under the indirect method of proving retaliation, Mr. Cracco may create a presumption of discrimination by establishing a prima facie case of discrimination....
>
> To do so, Mr. Cracco must demonstrate: (1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity....

---

[5]     Unfortunately, Plaintiff's pleadings do not plainly state the method(s) under which she proceeds (direct or indirect). Her brief opposing summary judgment jumps back and forth between the FMLA interference claim and the FMLA retaliation claim, and her summary judgment motion intermingles argument as to the two FMLA claims, complicating this Court's task (since different standards apply depending on the method of proof and type of claim asserted by the employee).  But the complaint itself (in several places) alleges "pretext" by Afton in discharging her – a reference to one step in the burden-shifting mechanism used with the underlined indirect method of proof, indicating that she proceeds under that approach.

> This presumption shifts the burden to Vitran to produce a legitimate, noninvidious reason for its actions…. If Vitran satisfies its burden of production by rebutting its prima facie case of discrimination, the burden then shifts back to Mr. Cracco to show that Vitran's reasons "are false and only a pretext for discrimination."

Here, as in ***Cracco***, the first and third elements of the prima facie case are not in question. Shinn took FMLA leave and thus engaged in statutorily protected activity. She ultimately was discharged, thereby suffering materially adverse employment action. But Shinn falls far short of establishing the second element of her prima facie case – that she was meeting Afton's legitimate expectations – which dooms her FMLA retaliation claim.[6]

Afton manufactures chemicals designed to enhance the performance of lubricating fuels and oils used in machinery and vehicles. Many of these products are hazardous in nature and must be handled with extreme caution. Safety is of paramount importance to Afton. The company has

---

[6] Shinn also failed to sustain her burden on the final prong of her prima facie case – that she was treated less favorably than similarly situated employees who did *not* exercise FMLA rights. She cries foul that David Stellhorn "who held Plaintiff's position in another unit, was not discharged for incidents," but she does not tell the Court whether Stellhorn ever exercised FMLA rights. In her final brief (Doc. 30), Shinn identifies one employee (her replacement, Carolyn Garrett) as having escaped discipline for a chemical incident and as having obtained a promotion in May 2008. But Garrett *took* FMLA leave in October 2007 and still got the promotion. Shinn failed to identify a single Afton employee who did NOT avail herself of FMLA rights and who got treated more favorably than Shinn was treated by the company.

detailed rules and procedures designed to prevent incidents, including product spills and "securement issues" (e.g., if an operator fails to properly secure a bulk load railcar or tanker truck).

Afton employs more than 300 workers at the Sauget, Illinois plant, which is staffed as follows.  The Plant Manager oversees the entire operation. The Operations Manager oversees three Area Managers.  The Area Managers oversee Unit Supervisors assigned in each of their respective areas.  The Unit Supervisors oversee the Chemical Operators within their respective units.

Shinn was hired as a Chemical Operator in September 1994.  In September 2001, Shinn was promoted to the position of Unit 290 Supervisor. Unit Supervisors are required to know (and ensure that ensure that their operators strictly comply with) the company's rules, processes and safeguards.

Daniel Luebbert, Area Manager of Area 2 at Afton, was Shinn's direct supervisor from January 1, 2003 through September 8, 2006.  As Unit 290 Supervisor, Shinn was responsible for reviewing and understanding Afton's training and reference manuals and ensuring that her operators received all needed training and followed the company's rules, policies and procedures.

A voluminous record before this Court clearly reveals that Shinn did *not* meet Afton's legitimate expectations related to these duties.  The records (affidavits, inter-office memoranda, performance evaluations, written reprimands issued from Luebbert to Bonnie Shinn, etc.) establish that Shinn had poor understanding of the equipment and processes for Unit 290, displayed

sub-par ability to lead her operators, failed to exercise proper control over the operators in her unit, failed to ensure proper completion of their duties, failed to properly train the operators, and was warned that she had to improve in these areas or lose her job.

Shinn emphasizes that she was given a safety award for her unit (so her performance couldn't have been all that terrible).  She also contends that the company's loading system was badly flawed (a flaw that, instead of her, should be blamed for the August 2006 hydrogen peroxide spill in Unit 290).  Neither argument is availing.   Afton endeavored to train and assist Bonnie Shinn, sending her to leadership seminars and picking up the tab for communications workshops, and hoping she would improve on the job.  At one point the company believed Shinn had made progress.  But by the summer of 2005, the outlook had changed.

In September 2003, the company issued a reprimand to Shinn for several job performance issues (Doc. 25, p. 14).  The reprimand arose from an incident involving an overloaded container that resulted in a spill.  Dan Luebbert expressly described the purpose of the warning and concluded: "I hope that a valuable lesson can be learned from this incident that can lead to making you a better supervisor....  Be advised any further errors or violations could lead to further disciplinary action, including discharge" (id.).

In January 2005, Luebbert gave Shinn negative marks in several key areas of her job performance evaluation.  That memo states that Shinn's

knowledge of Unit 290 equipment and processes is "significantly below average," that her unit's housekeeping performance "was not even close to being acceptable," and that she was "not assertive enough when dealing with your operators." Luebbert expressed optimism that Shinn might improve over the next few months and offered to help her try to reverse this negative trend.

After receiving the detailed January 28, 2005 memo setting forth these areas of concern about her job performance (Doc. 22-4, pp. 1-2), Shinn responded tersely in writing, acknowledging that she lacked the technical skills required for her position but railing at Luebbert's grading her "M minus," accusing him of "paranoia," and warning him to proceed with caution in evaluating her unit's record as to housekeeping (Doc. 25, pp. 18-19):

> I realize that I could have done much better, and will strive to do so, but I need to point out a few things to you … to document my displeasure of the review.  I don't know if I am really that bad of a supervisor, or you are trying to get some kind of focus off of your own shortcomings….
>
> Decision Making: Boy, how do I go there! Because of your "paranoia," I am usually not allowed to make any decisions….
> Technical Skills: I know that I lack in this category.  I am willing to learn, although I was up front about this from the beginning….
> Housekeeping: Yes, this was bad….  But … did you blast the units that had injuries?  Are they going to be scrutinized heavily also? …  Careful with this one.

Following this response to his 2005 Performance Expectations memo, Luebbert worked with Shinn to try to strengthen her grasp of the

technical aspects of her job and her ability to successfully supervise the operators who reported to her.

In August 2005, Afton directed Luebbert to issue a final written warning to Shinn.  He did so, advising her that out of five securement issues in the entire plant, three were attributable to her unit, reminding her that management had an expectation of "zero securement issues," and notifying her that any further errors or violations could lead to discharge (see Doc. 25, p. 21).

Shinn replied by submitting a written plan proposing how she would better monitor her operators so as to avoid all incidents and securement issues. Just three months later, in November 2005, a spill occurred in Unit 290 after an operator failed to secure a railcar that had been loaded with product. This was a 7,700 gallon spill of a chemical referred to as H-477 (Williams Affidavit, Doc. 24-4).  The final straw came in August 2006, when another operator in Unit 290 failed to follow the company's procedure for unloading hydrogen peroxide, resulting in another spill.

Due to the dangers associated with large amounts of hydrogen peroxide, Afton operators are required to don protective gear in working with hydrogen peroxide (full face shields, safety glasses, hard hats, chemical suits, boots, etc.) and to follow certain procedures during the unloading process. On August 25, 2006, a Unit 290 operator was not wearing his protective gear and did not remain on the scene during the unloading process (to be sure hoses

were properly connected to the right tanks, etc.).  He was not there to instruct the tanker truck driver, who improperly connected a hose carrying hydrogen peroxide to a tank containing sodium hydroxide.

The violent reaction of the two chemicals caused 90 gallons of sodium hydroxide to spew from the weighted manway of the tank.  Had it not been for the manway, the chemical reaction likely would have resulted in a catastrophic explosion.  A hazmat team was summoned to clean the contaminated area.  Shinn admitted that her operator failed to follow Afton procedures as to this procedure.

Rick Williams, Afton's Operations Manager from October 1, 2005 to April 30, 2009, bore the task of ensuring the plant's compliance with safety procedures.  Aware of the prior problems involving Unit 290 operators and Bonnie Shinn, when Williams learned of the August 2006 peroxide incident, he suspended her pending an investigation.  The investigation revealed, inter alia, that Unit 290 operators had *not* been trained on procedures for unloading hydrogen peroxide and that, *had* the operator in question been trained, the August 6, 2006 incident would not have occurred.  After obtaining Shinn's "side of the story" and completing the investigation, Williams made the ultimate decision to terminate Shinn's employment based on her failure or inability to perform the essential duties of her job.

Shinn has not demonstrated (and on this record cannot demonstrate) that she was meeting Afton's legitimate job expectations when

she was fired.  She has not established a prima facie case of FMLA retaliation, and Afton is entitled to judgment as a matter of law on this claim (Count I).

■■■   FMLA INTERFERENCE CLAIM

Shinn seeks summary judgment on Count II on the grounds that there are no material facts questions and "she was wrongfully prevented from returning to work" from her knee injury in May 2006, thus entitling her to judgment as a matter of law on this claim (Doc. 22-2, p. 3).  Afton counters that it is entitled to summary judgment on Count II, because Shinn has not made her prima facie case for this claim.  The Court agrees with Afton.

The employee shoulders the burden of proving FMLA interference. **Darst v. Interstate Brands Corp.**, **512 F.3d 903, 908 (7th Cir.2008)**; **Kohls**, **259 F.3d at 804.**  To prevail on an interference claim, the employee must show that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. **Ryl-Kuchar**, **565 F.3d at 1030, citing Smith**, **560 F.3d at 699.  Accord Simpson**, **559 F.3d at 712**; **Ridings**, **537 F.3d at 761.**

Shinn's case falters on the third prong and collapses on the fifth.

Even assuming *arguendo* that the first four prongs are satisfied,[7] Shinn hits a wall on the final prong – requiring her to show that Afton denied her FMLA benefits to which she was entitled.

As noted above, the FMLA entitles an employee to 12 workweeks of unpaid leave every 12-month period, if the employee (or her spouse, parent, etc.) is afflicted with a serious health condition. **29 U.S.C. § 2612(a).** There is no question that Bonnie Shinn took FMLA leave to care for her husband, who was battling Hodgkins lymphoma.   The uncontroverted record discloses the following.

Kenneth Shinn was diagnosed in January 2003.   In May 2004, Bonnie Shinn advised Afton's Human Resources Department that she wanted to take leave to care for Kenneth during his stem cell treatment.   She was told that it was perfectly permissible to use Sickness and Accident Leave to do so.

---

[7]     Afton disputes that Shinn satisfied the third and fourth prongs.  As to prong three, entitlement to FMLA leave, Afton argues that Shinn cannot show any entitlement to FMLA leave *as of the time she was terminated*, i.e., she already had been given all the leave the FMLA secured for her and was entitled to no more.  As to prong four, Afton maintains that although Shinn had given notice and obtained leave on prior occasions, she had not notified the company of any need for (or intent to take) additional leave *as of the time she was terminated*.  Supporting this position is the first affidavit of George Ferguson, Afton's HR Supervisor (Doc. 24-5).  Ferguson attests that following Shinn's return to work on July 11, 2006 all the way through her termination on September 8, 2006, he received no request for FMLA leave and was not aware that Shinn intended or needed to take more FMLA leave.

She encountered no difficulty in obtaining the leave on more than one occasion – both to care for Kenneth and to obtain medical treatment for herself.

Bonnie Shinn took FMLA leave from June 1, 2004 through August 1, 2004.  She again took FMLA leave November 17, 2005 through January 1, 2006.  She suffered a knee injury in May 2006, after which she took FMLA leave from May 11, 2006 to July 10, 2006.  During all three of these periods, Bonnie Shinn continued to receive full pay and benefits.  The HR Supervisor (Greg Ferguson) never denied *any* request for leave made by Bonnie Shinn (see Doc. 24-5, p. 3).

The last time Bonnie received medical care for her knee injury was in July 2006.  On July 11, 2006, Bonnie returned to work. The company never received any request for FMLA leave from her after that date (se*e* footnote 7). The peroxide incident occurred on August 25, 2006.  Shinn was discharged on September 8, 2006.

From June 1, 2004 through the July 11, 2006 return to work, Bonnie Shinn took 169 days of paid leave.  Looking just at the 12-month period preceding her discharge on September 8, 2006, Bonnie Shinn was on leave with full pay and benefits for <u>107 days</u>.  At the time Afton terminated Shinn, she already had been given *more* leave than the FMLA entitled her to (plus her leave was with full pay and benefits).  In her deposition, Shinn even conceded: "one thing that could be said of Afton was that it would liberally give FMLA" (Shinn Deposition at p. 67, quoted in Doc. 24-2, ¶ 194).

The FMLA provides for 12 workweeks of leave during any 12-month period. The number of days in Bonnie Shinn's workweek does not readily leap from the oversized record before the Court. Assuming the workweek was five days, Shinn took over 21 workweeks of leave. Even if her workweek was a full seven days, she had already been afforded over 15 workweeks on the date of her discharge.

In any event, Shinn had been given all the leave the FMLA entitled her to and then some. She has not and cannot show that Afton denied her FMLA leave to which she was entitled. Therefore, she has failed to make a prima facie case of FMLA interference. The Seventh Circuit highlighted this very problem in ***de la Rama v. Illinois Department of Human Services***, **541 F.3d 681, 686-87 (7th Cir. 2008)**:

> in light of the fact that de la Rama was permitted to take seventeen weeks of leave – five more than the twelve weeks [her employer] was required to give her under the FMLA – we find it difficult to see how [her employer] interfered with her entitlement to leave at all.

Shinn's claim for FMLA interference does not survive summary judgment.

An additional obstacle exists as to both of Shinn's FMLA claims – the statute of limitations. Afton expressly raised this in its October 2008 answer and again presents it via the summary judgment motion. Shinn filed her complaint in this Court just *after* the two-year anniversary of her discharge from employment.

Plainly this suit was filed beyond the two-year statute of limitations for FMLA lawsuits, *other than* lawsuits which allege a "willful violation" of the FMLA.  29 U.S.C. 2617(c)(1) states that except as provided in paragraph (2), "an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."

Here, the last event constituting an FMLA violation is either Afton (allegedly) restricting Shinn's return to work from her knee injury on May 18, 2006 or Afton (allegedly) firing Shinn for taking so much leave on September 8, 2006.  Shinn filed suit September 9, 2008.  That's two years and one day after her firing and two years, three months and twenty-two days after Afton allegedly interfered with her desire to return to work on May 18, 2006.  Shinn did not file her complaint within two years of either event, so it is time-barred unless her allegations fit within § 2617(c)(2).

Section 2617(c)(2) section provides that as to actions for willful violations of the FMLA, the employee has three years to file suit.  Shinn's complaint does not allege (and the record before this Court, construed in Shinn's favor, does not support) a willful violation.  Accordingly, her action is time-barred, supplying an alternate or second ground on which Afton is entitled to judgment as a matter of law on the FMLA claims.  Which leaves Count III, alleging intentional infliction of emotional distress.

■■■   Claim for Intentional Infliction of Emotional Distress

Count III of the complaint alleges that Afton's discriminatory and unlawful termination of Shinn constitutes intentional infliction of emotional distress under Illinois law.  Last year, the Seventh Circuit reiterated the requirements for such a claim in *Lewis*, **523 F.3d at 746 (7th Cir. 2008):**

> (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress.

Affirming the district court's grant of summary judgment on the plaintiff's intentional infliction claim, the Seventh Circuit emphasized this "standard is quite high," does not extend to "insults, indignities, threats … [and] petty oppressions," and the "defendant's conduct must extend beyond the bounds of human decency and be considered intolerable in a civilized community." *Lewis*, **523 F.3d at 746-47.**

In the employer/employee context, "actions cannot be classified as extreme and outrageous unless they go well beyond the parameters of the typical workplace dispute," for example, involving such conduct as an employer offering an employee money in return for sexual favors, threatening to kill an employee, or engaging in an extensive course of harassment designed to coerce the employee to falsify work reports.  *Id.* **at 747.**

Here, as in **Lewis,** even assuming as true all events alleged in the complaint, the conduct does "not rise to the level necessary to success on a claim of intentional infliction of emotional distress." **Id**.

        D.    <u>Conclusion</u>

Construing the evidence and reasonable inferences in the light most favorable to Bonnie Shinn, the Court concludes as follows. No genuine issues of material fact remain, and Afton is entitled to judgment as a matter of law. Shinn has not established a prima facie case of FMLA retaliation (Count I) or FMLA interference (Count II). Shinn's FMLA claims (Counts I and II) are time-barred. Afton's conduct was not egregious, extreme or outrageous, so as to support a claim for intentional infliction of emotional distress (Count III).

For all these reasons, the Court **DENIES** Plaintiff's motion for summary judgment (Doc. 22), **GRANTS** Defendant's motion for summary judgment (Doc. 23), and **DIRECTS** the Clerk of Court to enter judgment in favor of Afton and against Shinn.

IT IS SO ORDERED.

DATED this 28th day of September 2009.

s/ **Michael J. Reagan**
Michael J. Reagan
United States District Judge